UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————

NATASHA J.,

             Plaintiff,

    -v-

COMMISSIONER OF SOCIAL SECURITY,

             Defendant.

———————————————————————

23-CV-06333-MJR
DECISION AND ORDER

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 18)

Plaintiff Natasha J.[1] ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying her application for Supplemental Security Income ("SSI") pursuant to the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Plaintiff's motion (Dkt. No. 11) is granted, and defendant's motion (Dkt. No. 15) is denied.

———————————————

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

## BACKGROUND[2]

Plaintiff applied for SSI on October 27, 2020, with an alleged onset date of that same date.  (Administrative Transcript ["Tr."] 221-26. Her claim was denied initially (Tr. 77-98, 123-28), and on reconsideration. (Tr. 99-122, 132-38).  Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 139-42).  On September 15, 2022, ALJ Gretchen Mary Greisler held a telephone hearing, at which Plaintiff participated, with her counsel.  (Tr. 44-76).  A vocational expert also testified.  On October 18, 2022, the ALJ issued a decision denying Plaintiff's claim.  (Tr. 14-43).  The Appeals Council declined review on April 17, 2023. (Tr. 1-6).  This action followed.

## DISCUSSION

### I.    *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential.  Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).  "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts."  *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014).  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the

---

[2] The Court presumes the parties' familiarity with Plaintiff's medical history, which is summarized in the moving papers.

Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.    *Standards for Determining "Disability" Under the Act*

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but

cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c). As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* §§404.1520(c), 416.920(c). Third, if the claimant does have a severe impairment, the

Commissioner asks two additional questions:  first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1.  *Id.* §§404.1520(d), 416.920(d).  If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience.  *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five.  Before doing so, the Commissioner must "assess and make a finding about [the claimant's] RFC based on all the relevant medical and other evidence" in the record.  *Id.* §§404.1520(e), 416.920(e).  RFC "is the most [the claimant] can still do despite [his or her] limitations."  *Id.* §§404.1545(a)(1), 416.945(a)(1).  The Commissioner's assessment of the claimant's RFC is then applied at steps four and five.  At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work."  *Id.* §§404.1520(f), 416.920(f).  If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act.  *Id.* §§404.1520(f), 416.920(f).  Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work."  *Id.* §§404.1520(g)(1), 416.920(g)(1).  If the claimant can adjust to other work, he or she is not disabled.  *Id.*

§§404.1520(g)(1), 416.920(g)(1). If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.    *The ALJ's Decision*

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 27, 2020, the application date. (Tr. 19). At step two, the ALJ found Plaintiff has the following severe impairments: left shoulder impairment status post dislocation, Hill Sachs deformity and supraspinatus tear; fibromyalgia; a spine disorder; a seizure disorder; bipolar disorder; anxiety disorder; and borderline intellectual functioning. (Tr. 19-20). At step three, the ALJ found that none of these impairments met or equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 20-26). Before step four, the ALJ found that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 416.967(b), except she could only frequently stoop, crouch, crawl, kneel, and climb stairs and ramps; occasionally balance; not climb ladders, ropes, or scaffolds or work at unprotected heights or in close proximity to dangerous machinery; reach overhead occasionally and reach in all other directions frequently with her dominant left upper extremity; perform simple, repetitive work at a consistent, goal-oriented pace; engage in frequent interaction with supervisors, coworkers and the public; make simple decisions directly related to her work; and tolerate occasional minor changes. (Tr. 26).

At step four, the ALJ found that Plaintiff had no past relevant work. (Tr. 36). At step five, the ALJ found that there are jobs available in the national economy that Plaintiff can perform. (Tr. 36-37). Accordingly, the ALJ found that Plaintiff has not been disabled within the meaning of the Act since October 27, 2020, her application date. (Tr. 37-38).

IV.    *Plaintiff's Challenge*

Plaintiff argues, *inter alia*, that the case must be remanded, because the ALJ's findings at step three are not supported by substantial evidence.  The Court agrees.

Plaintiff's school records (Tr. 2044-054) show that when she was 16 years of age, she was administered an IQ test on which she scored 73, with a verbal score of 62.  She was placed on an Individualized Education Program by the school's Committee on Special Education, and received several educational accommodations.

On May 19, 2021, the Commissioner's consultative examiner, Dr. Amanda Slowik, Psy.D., examined plaintiff.  Dr. Slowik opined that Plaintiff has "psychiatric and cognitive problems which may significantly interfere with [Plaintiff's] ability to function on a daily basis." (Tr. 703).  Dr. Slowick recommended that Plaintiff undergo an IQ evaluation and vocational assessment.  (Tr. 703).

The ALJ rejected Plaintiff's IQ scores as not reliable because of Plaintiff's "subsequent activities, past employment, and ability to live independently." (Tr. 25-26). This was error.

The SSA's current Program Operations Manual System ("POMS"), explains that only qualified specialists may question the validity of an IQ score. The rule effectively prohibits an ALJ from substituting his or her own lay opinion for that of medical professionals regarding the reliability of a claimant's IQ score. The SSA provided

"supplemental information" explaining that "only qualified specialists, Federal and State agency medical and psychological consultants, and other contracted medical and psychological experts, may conclude that an obtained IQ score(s) is not an accurate reflection of a claimant's general intellectual functioning." SSA Final Rule Regarding Revised Criteria for Evaluating Mental Disorders., Soc. Sec. Rep. P 15551C. Here, Plaintiff's IQ scores were not questioned by a qualified specialist, but only by the ALJ.

Further, despite every psychological medical source in this case noting Plaintiff's current cognitive and intellectual deficits, the ALJ failed to acknowledge, let alone address, the opinion and recommendation of Dr. Slowick, the Commissioner's own consultative examiner, that Plaintiff should be administered a further IQ test. *See Cuspert v. Acting Comm'r of Soc. Sec.*, No. 20 CIV. 10583 (SLC), 2022 WL 4355128, at *8 (S.D.N.Y. Sept. 20, 2022)(criticizing the ALJ for finding the psychologist's opinion "unpersuasive" regarding marked limitations but failing to mention the recommendation for IQ testing).

On this record, the ALJ should have ordered further cognitive testing. The absence of "current" scores left a gap in evidence that cannot stand. *See, e.g., Jackson v. Berryhill*, 694 F. App'x 39, 42 (2d Cir. 2017)(remanding for additional intellectual testing for a claimant with significant cognitive impairments, a history of drug abuse, adult recorded hallucinations, tangential thought forms, anxiety, poor concentration, a history of depression, suicidal ideation and self-cutting, and a diagnosis of bipolar disorder); *Shamar R. v. Kijakazi*, No. 21-CV-6106F, 2023 WL 415097, at *5 (W.D.N.Y. Jan. 26, 2023)(remanding and finding that, in light of stale "listing level" IQ scores, special education services and a persistent cognitive impairment, "the ALJ should have further

developed the record to determine the severity of such impairments, including obtaining an intelligence consultative examination with updated IQ testing."); *see also Jasmin G. v. Comm'r of Soc. Sec.,* 22-CV-06155-MJR, 2024 WL 4274840 at *13-15 (W.D.N.Y. Sept. 24, 2024).

The Commissioner argues that any error in not ordering a further IQ test is harmless, because the ALJ found that Plaintiff's condition failed to satisfy other necessary criteria.  The Court finds this argument unpersuasive.  It is not clear to the Court that if Plaintiff scores lower on a subsequent IQ test, the ALJ and perhaps more importantly, the medical experts in this case, would still reach their same conclusions and opinions.[3]  In other words, the gap in the record must be filled before this Court can conduct a meaningful review.

On remand, the Commissioner should order further intelligence/IQ testing of the Plaintiff, as well as a supplemental psychological examination.[4]

---

[3] Dr. Slowick must have thought that a further IQ test might change her opinion or she would not have recommended it.
[4] Plaintiff also argues that the ALJ failed to evaluate properly Plaintiff's claim at step five.  The Commissioner should also consider this argument on remand.

### CONCLUSION

For the above reasons, Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is granted and defendant's motion for judgment on the pleadings (Dkt. No.15) is denied. The case is remanded for further administrative proceedings. The Clerk of Court shall take all steps necessary to close the case.

**SO ORDERED.**

Dated:     March _11_, 2026
           Buffalo, New York

                                    MICHAEL J. ROEMER
                                    United States Magistrate Judge

- 10 -